IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Rick Forester, Individually and as Next Friend to N.F and M.F., Minors; Ashlie Forester, Individually; Constance Cohen, Individually; Carol Solley, Individually; and James Solley, Individually, | § § § § § § § § | |
| *Plaintiffs,* | § § | |
| vs. | § § | Civil Action No. 4:17-cv-00523-ALM |
| General Motors LLC, | § § § | |
| *Defendant.* | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

**To the Honorable United States Judge of Said Court:**

COME NOW, Rick Forester, Individually and as Next Friend to N.F. and M.F., Minors; Ashlie Forester, Individually; Constance Cohen, Individually; Carol Solley, Individually; and James Solley, Individually (hereinafter referred to as "Plaintiffs"), and respectfully file this First Amended Complaint against General Motors LLC (hereinafter referred to as "Defendant"), and in support hereof would state and show the following:

### I. Parties

1. Plaintiff Rick Forester is the surviving spouse of Karen Forester, deceased. Plaintiff resides in and is a citizen of Ennis, Texas.

2.  Plaintiffs N.F. and M.F. are minor children of Karen Forester, deceased. They make an appearance in this action through their next friend, Rick Forester. They reside in and are citizens of Ennis, Texas.

3.  Ashlie Forester is a surviving daughter of Karen Forester, deceased. She resides in and is a citizen of Ennis, Texas.

4.  Constance Cohen is a surviving daughter of Karen Forester, deceased. She resides in and is a citizen of Ennis, Texas.

5.  Carol and James Solley are married, and they are the biological parents of Karen Forester, deceased. They reside in and are citizens of Ennis, Texas.

6.  Defendant General Motors LLC is a Delaware limited liability company with its principal place of business in Michigan. Its sole member is General Motors Holdings LLC, a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member is General Motors Company, a Delaware corporation with its principal place of business in the Michigan. Service of process upon this Defendant is not necessary as Defendant has entered an Answer.

## II. Jurisdiction

7.  This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. Section 1332.

8.  The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

Plaintiffs' First Amended Complaint
Page 2 of 13

## III. Facts

9. On or about November 15, 2016, Karen Forester was driving a 2015 Chevrolet Cruze (VIN# 1G1PC5SB6F7246867) traveling westbound on State Highway 64 in Van Zandt County, Texas.

10. The subject vehicle was designed by Defendant.

11. The subject vehicle was manufactured by Defendant.

12. The subject vehicle was also assembled and tested by Defendant.

13. Another westbound vehicle on State Highway 64 struck the rear end of the subject vehicle that Karen Forester was operating.

14. At the time of the accident, Karen Forester was properly seated and properly wearing the available seat belt.

15. However, despite being properly seated and wearing the available 3-point seat belt, Karen Forester sustained fatal injuries during the accident when the vehicle failed to protect her because it violated several crashworthiness principles.

16. There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

    1. Maintain survival space;

    2. Provide proper restraint throughout the entire accident;

    3. Prevent ejection;

    4. Distribute and channel energy; and

    5. Prevent post-crash fires.

17. When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included a crashworthiness definition similar to that used above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

18. The National Transportation Safety Board (NTSB) has also stated that, "Vehicle crashworthiness refers to the capacity of a vehicle to protect its occupants from crash forces. This protection—which is achieved, in part, by vehicle structure—includes maintaining a survival space around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

19. Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails. Vehicle manufacturers have known for decades and have admitted under oath that there is a distinction between the cause of an accident versus the cause of an injury.

20. Indeed, vehicle manufacturers have known for decades that crashworthiness is the science of preventing or minimizing injuries or death **following** an accident through the use of a vehicle's various safety systems.

21. Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle."

22. General Motors has stated in the past that, "The rich don't deserve to be safer … Isn't it time we realized safety is not just for the pampered and the privileged?

Safety is for all."

23. Volvo has stated that it has a goal that no one is killed or injured in a Volvo vehicle by the year 2020. Volvo has also stated that, "Technologies for meeting the goal of zero injuries and fatalities are basically known today – it is a matter of how to apply, finance, distribute and activate."

24. Because every American has the right to a safe vehicle, because safety is for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon auto manufacturers to investigate and find out what other automakers are doing with regards to safety and to apply those same methods or technology to their own vehicle. Furthermore, an automaker cannot choose to use safer technology in Europe, Australia, Japan, or some other country and refuse or fail to offer that same safety technology to consumers in America.

25. It is further incumbent upon auto manufacturers to protect consumers by using knowledge that a manufacturer has acquired over decades and decades of vehicle design, testing, and reverse engineering of other manufacturers' vehicles.

26. In fact, insofar as society permits vehicle manufacturers to operate in such a way that they are permitted to sell highly complex, potentially dangerous, and also potentially highly profitable products on the market, manufacturers have a duty to do their very best to ensure that the vehicle will not be harmful to buyers, their households, or third parties.

27. This is cemented by the fact that every state of the United States has case law which holds that every person has a duty to exercise reasonable care to avoid a

foreseeable risk of injury to others.

28. Most (if not all) engineering associations in the United States (and around the world) have a code of ethics. The number 1 fundamental canon of ethics for almost all engineers is to "hold paramount the safety, health, and welfare of the public." Accordingly, since paramount means "superior to all others", all vehicle engineers have to hold the safety, health, and welfare of the public as their highest considerations when they design vehicles.

29. Although it is true that there are minimum performance standards which an automaker is supposed to meet before selling a vehicle in the United States (the FMVSS), these minimum performance standards do not adequately protect the public.

30. Indeed, Joan Claybrook, former administrator of the NHTSA, wrote a letter to major auto makers where she said, "Our federal safety standards are and were intended by Congress to be minimum standards. The tragedy is that many manufacturers have treated the standards more like ceilings on safety performance rather than floors from which to improve safety."

31. Additionally, in September of 2014, a Congressional report was issued in response to the General Motors ignition switch recall. The report questioned whether NHTSA had the technical expertise, culture and analytic tools needed to address safety issues. The report stated, "NHTSA also lacked the focus and rigor expected of a federal safety regulator". It was also stated that NHTSA staff has a "lack of knowledge and awareness regarding the evolution of vehicle safety systems they

regulate."

32. Thus, it is clear that a prudent manufacturer's research and analysis should not stop with standards compliance. When it knows—or, through reasonable diligence, should know—that a product design presents a latent hazard or foreseeable risk of injury, it should go above and beyond the minimum requirements set forth in mandatory standards, rules, and/or regulations.

### IV. Cause(s) of Action as to Defendant

33. It was entirely foreseeable to and well-known by Defendant that accidents and incidents involving its vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

34. The injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

35. Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question.

36. As detailed herein, the vehicle contains and/or Defendant has committed either design, manufacturing, marketing, assembling, and/or testing defects.

37. Defendant either knew or should have known of at least one safer alternative design which would have prevented the fatal injuries to Karen Forester.

38. In addition to the foregoing, Defendant, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, marketed, assembled, and/or tested said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, assembled, marketed, and/or tested because Defendant knew and/or should have known of the following, non-exhaustive list of defects:

   a. The vehicle failed to provide adequate protection a rear impact event;
   b. The vehicle failed to contain UHSS, AHSS, martensite, boron, ferrite, CP, DP, or TRIP steel in the following areas: from the rear bumper to the B-pillar, side rails, roof rails, longitudinal rails, cross members, all rear structure lower, middle and upper load paths, door rings;
   c. The vehicle failed to contain MPa steel of 1100 or more in the following areas: from the rear bumper to the B-pillar, side rails, roof rails, longitudinal rails, cross members, all rear structure lower, middle and upper load paths, door rings;
   d. The vehicle failed to maintain survival space of the rear seat structure;
   e. The vehicle failed to provide adequate occupant protection;
   f. The vehicle failed to maintain the safety cage;
   g. The vehicle's seat collapsed rearward because the seatbelt is in such proximity to the recline mechanism, that when the lap belt was loaded in the rear impact, the seat reclined rapidly lie it had collapsed;
   h. The vehicle's seat failed to absorb any energy;
   i. The vehicle's seat failed to deflect or yield in a controlled manner;
   j. The vehicle's seat failed to perform as designed by Defendant;
   k. The vehicle's seat failed to serve the purpose of a seat restraint;
   l. The vehicle's seat failed to provide proper restraint;
   m. The vehicle's seat violated principles of crashworthiness;
   n. The vehicle's seat violated FMVSS 207;

      o. The vehicle's seat violated SAE recommended practices;
      p. The vehicle's seat violated GM's performance guidelines;
      q. The vehicle's seatbelt and seat recliner were not properly subjected to human factors engineering analysis;
      r. The vehicle's seat recliner was not properly shielded or guarded so that the webbing could not cause an unwanted actuation or reclination of the seat;
      s. The design of the seat recliner rendered the other safety systems ineffective;
      t. The weak rear structure treated the rear seat area like a trash compactor;
      u. The vehicle violated principles of crashworthiness;
      v. The vehicle failed to use other recliner designs that are shielded, guarded or located in an area that unwanted actuation or reclination by the seatbelt cannot occur because the recliner is nowhere near the proximity of the webbing;
      w. Defendant failed to conduct proper engineering analysis to identify the risks, hazards and danger associated with the unwanted actuation or reclination of the seat recliner;
      x. Defendant failed to design away, guard against or at least warn about the risks, hazards and danger associated with the unwanted actuation or reclination of the seat recliner; and/or
      y. Defendant failed to properly test so that this defect(s) could be identified.

39. Defendant further failed to conduct proper testing and engineering analysis during the design, development, and/or testing of the vehicle.

40. Defendant was negligent in the manufacture, assembly, marketing, and/or testing of the vehicle in question.

41. In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death;

42. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

43. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

44. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

45. A company that does not conduct a proper engineering analysis that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone is negligent.

46. Based upon information and/or belief, Defendant either used or knew about advanced safety features used in Europe, Australia, Japan and some other country and chose not to offer those safety features to American consumers.

47. Defendant's occupant protection philosophy and design philosophy are utilized in various model vehicles, including ones sold overseas in other markets.

48. When Defendant designed the subject vehicle, it did not reinvent the wheel. Defendant used an enormous amount of human capital which had been acquired from numerous different engineers which had worked on many prior vehicle. This knowledge would have been utilized in different aspects of the various designs of the subject vehicle.

49. Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendant is also in possession of what, if any, engineering analysis it performed.

50. However, it is expected that after all of these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

51. Lastly, the materials from other models, years, and countries will provide evidence regarding what Defendant knew, when they knew it, and about what was utilized or not utilized as well as the reasons why.

52. The foregoing acts and/or omissions, defects, and/or negligence of Defendant were the producing, direct, proximate, and/or legal cause of Karen Forester's fatal injuries and Plaintiffs' damages.

## V. Damages to Plaintiffs

53. As a result of the acts and/or omissions of Defendant, Plaintiffs have suffered past and future; loss of care, maintenance, support, services, advice, counsel, reasonable contributions of pecuniary value, loss of companionship and society, loss of consortium, and mental anguish as a result of the death of Karen Forester.

54. As a result of the acts and/or omissions of Defendant, Plaintiffs have become obligated to pay reasonable and necessary funeral, and burial expenses as a result of the fatal injuries to Karen Forester.

55. The above and foregoing acts and/or omissions of the Defendant, resulting in the fatal injuries to Karen Forester, have caused actual damages to Plaintiffs in excess of the minimum jurisdictional limits of this Court.

## VI. Prayer

56. For the reasons presented herein, Plaintiffs pray that upon a final trial of this cause, Plaintiffs recover judgment against Defendant for:

   a. actual damages;
   b. prejudgment and post-judgment interest beginning November 15, 2016;
   c. costs of suit; and
   d. all other relief, general and special, to which Plaintiffs are entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

**The TRACY firm**

  /s E. Todd Tracy
E. Todd Tracy (Attorney-in-Charge)
State Bar No. 20178650
EToddTracy@vehiclesafetyfirm.com
Stewart D. Matthews
State Bar No. 24039042
SMatthews@vehiclesafetyfirm.com
Andrew G. Counts
State Bar No. 24036408
ACounts@vehiclesafetyfirm.com
4701 Bengal Street
Dallas, Texas 75235
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Plaintiffs**

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the Defendant has been contacted regarding this Amended Complaint, and that the Defendant is unopposed. Accordingly, a motion is presented for the Court's consideration.

/s/ E. Todd Tracy
E. Todd Tracy
Stewart D. Matthews
Andrew G. Counts

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of November, 2017, I caused to be electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ E. Todd Tracy
E. Todd Tracy
Stewart D. Matthews
Andrew G. Counts